

---

Stanley Fleishman, Fleishman, Fisher & Moest, Los Angeles, Cal., for plaintiff-appellant.

Calvin W. Torrance, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellees.

Before: PREGERSON, D.W. NELSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

Dr. Leo F. Kenneally filed a complaint in the district court under 42 U.S.C. § 1983 seeking to enjoin the Attorney General of the State of California and individual members of the Division of Medical Quality of the Medical Board of California from holding an administrative hearing to revoke his

physician's license. The district court abstained on the authority of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and dismissed the underlying action. Kenneally appeals. We have jurisdiction under 28 U.S.C. § 1291. *See Partington v. Gedan*, 880 F.2d 116, 120 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 810 (1990), and *cert. granted and vacated on other grounds*, —— U.S. ——, 110 S.Ct. 3265, 111 L.Ed.2d 776 (1990). We affirm.

## FACTS

Kenneally is a medical doctor who performs therapeutic abortions in his outpatient clinic. Since 1976, approximately 10,-000 abortions a year have been performed at this clinic. In April 1990, the Medical Board of California ("Board") filed an accusation against Kenneally, accusing him of gross negligence and incompetence in the performance of abortions on six patients. Three of the six patients died shortly after the abortions were performed. The accusation also alleges that Kenneally's failure to use general anesthetics, and to have IV's available when conducting second trimester abortions, fell below the required standard of care.

Kenneally filed a complaint in the district court seeking a temporary restraining order and an injunction to prevent the Board from holding a hearing on the accusation. He alleged that the Board's proceedings violated rights guaranteed him by the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. He also alleged that the Board was subjecting him to selective and discriminatory prosecution because he performed low cost therapeutic abortions in an outpatient clinic, rather than in a hospital. He further alleged that the state procedures did not afford him a full and fair opportunity to raise his federal constitutional claims.

The district court ordered the defendants to show cause why the state administrative hearing should not be enjoined, and to address the issue of abstention. Pending the resolution of those matters, the court issued a temporary restraining order enjoining the Board from conducting the administrative hearing.

When the district court held its hearing to resolve the injunction and abstention issues, it had before it the deposition testimony of seven witnesses as well as a number of declarations and exhibits. The court denied Kenneally's request to present live testimony, but permitted extensive oral argument. Following the hearing, the court ruled that *Younger* abstention applied, denied Kenneally's motion for a preliminary injunction and dismissed the action. This appeal followed.

## DISCUSSION

### A. Standard of Review

■ When the district court abstains on the basis of *Younger*, "which forbids federal courts from enjoining pending certain categories of state proceedings except in extraordinary circumstances, we review its abstention de novo." *Partington*, 880 F.2d at 120. "This de novo review is applied even though we are reviewing the action of the district court in granting or denying an injunction." *Id.*

### B. The Three Requirements of *Younger* Abstention

■ *Younger* requires the court to abstain and dismiss an action to enjoin a state administrative proceeding if all three prongs of the *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), test are met; unless one of the recognized exceptions to *Younger* is present. *Partington*, 880 F.2d at 121. The three-part *Middlesex* test requires federal courts to examine

(1) The nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings.

*Id.* To determine whether an exception to *Younger* is present, the court "must also examine whether the proceeding demonstrates 'bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate.'" *Id.* (quoting *Middlesex,* 457 U.S. at 435, 102 S.Ct. at 2523).

Kenneally does not dispute the district court's findings that prongs one and two of the *Middlesex* test are satisfied. Rather, he argues that the third prong of the *Middlesex* test is not met. He contends he will be unable to litigate his federal constitutional claims in the state proceedings due to the inadequacy of those proceedings and bias by the Board. He also argues the district court erred by denying his request for an evidentiary hearing to present oral testimony on his claim that the bad faith exception to *Younger* abstention applied.

### 1. *Adequacy of California's Procedures*

■ Article III, § 3.5 of the California Constitution prohibits administrative bodies from declaring statutes unconstitutional or refusing enforcement of statutes on the basis of claims that such statutes are unconstitutional.[1] However, "even if a federal plaintiff cannot raise his constitutional claims in state administrative proceedings that implicate important state interests, his ability to raise the claims via state judicial review of the administrative proceedings suffices." *Partington,* 880 F.2d at 124; *see also Ohio Civil Rights Comm'n v. Dayton Christian Sch. Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 2723–24, 91 L.Ed.2d 512 (1986).

Section 3.5 of the California constitution "['] does not affect ... [administrative

agencies'] competence to examine evidence before them in light of constitutional standards.'" *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.,* 683 F.2d 1229, 1234 (9th Cir.1982) (quoting *Capitol Indus.–EMI v. Bennett,* 681 F.2d 1107, 1117 n. 28 (9th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982)). The Board may "receive evidence in light of [Kenneally's constitutional] challenges and the California [courts] remain competent to review such challenges" upon a petition for writ of mandate. *Id.* at 1235. *See also* Cal.Civ. Proc.Code § 1094.5; Cal.Gov't Code § 11523.

■ Kenneally argues that he will not have a meaningful opportunity to present his constitutional claims to the state court, because the Board will revoke his license immediately upon conclusion of the hearing. In response to this contention, the Board has stipulated that it will not make its decision effective until thirty days after a decision is rendered.[2] Kenneally asserts that even if this 30–day stay is granted by the Board, his opportunity to litigate his constitutional claims before the state court will be lost. He contends that the filing of a petition for a writ of mandate with the California superior court, which will trigger that court's review of the Board proceedings, will not stay any Board revocation order, and his constitutional claims cannot be heard and resolved by the California superior court within the 30–day stay period.

■ Kenneally is correct that the Board's order is not automatically stayed pending review by the California superior court. *See* Cal.Civ.Proc.Code § 1094.-5(h)(1). However, the superior court has

---

**1.** Section 3.5 provides:

An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:

(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;

(b) To declare a statute unconstitutional;

(c) To declare a statute unenforceable or to refuse to enforce a statute on the basis that

federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations.

Cal. Const. Art. III § 3.5.

**2.** The Board has the power to include a stay of execution in its decision, or a stay may be granted by the Board at any time before the decision becomes effective. *See* Cal.Gov't Code § 11519(b).

discretion to stay the operation of the administrative order "pending the judgment of the court, or until the filing of a notice of appeal from the judgment or until the expiration of the time for filing the notice, whichever occurs first." Cal.Civ.Proc.Code § 1094.5(h)(1). In exercising this discretion, " '[t]he statute mandates a preliminary assessment of the merits of a real party's petition and a conclusion that he is likely to obtain relief therein.' " *Medical Board v. Superior Court (Elam)*, 227 Cal. App.3d 1458, 278 Cal.Rptr. 247, 249 (1991) (quoting *Board of Medical Quality Assurance v. Superior Court (Willis)*, 114 Cal. App.3d 272, 170 Cal.Rptr. 468, 470 (1980)).

This statutory framework provides a meaningful opportunity for Kenneally to present his constitutional claims for independent judicial review prior to the Board's decision becoming effective. The state court's inquiry "shall extend to the questions whether the respondent [here, the Board] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." *See* Cal.Civ. Proc.Code § 1094.5(b). Abuse of discretion may be established "if the respondent has not proceeded in the manner required by law." *Id.*

True, the California superior court may decide not to stay the Board's administrative order beyond the 30–day stay period. But this does not mean that Kenneally will not have had an opportunity to present his constitutional claims to the state court for its review and have those claims considered before the Board's order takes effect. Nothing under California law limits Kenneally from presenting his claims at the stay hearing. Indeed, the petitioner in *Elam* presented several constitutional and nonconstitutional claims to the superior court when he applied for a stay of an administrative order. *Elam*, 278 Cal.Rptr. at 249 (due process claims).

We conclude that Kenneally has not established that California's agency review procedures deny him an opportunity for meaningful review of his federal constitutional claims.[3]

### 2. Bias

Kenneally also argues that the third prong for *Younger* abstention is not met because the Board is biased against him. "[W]here a state tribunal has been found incompetent by reason of bias, the Supreme Court has held that there was effectively no opportunity to litigate constitutional claims." *Partington*, 880 F.2d at 121.

"Bias exists where a court has prejudged, or reasonably appears to have prejudged, an issue." *Id.* at 135 (Reinhardt, J., concurring and dissenting.) In *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court emphasized that one who alleges bias

> must overcome a presumption of honesty and integrity in those serving as adjudicators; and [he] must convince [the court] that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47, 95 S.Ct. at 1464.

Kenneally argues that the Board's bias is demonstrated by statements made by

---

**3.** Kenneally also argues that he will not have an opportunity to present his constitutional claims because neither the state superior court nor the state appellate court can disturb the Board's order to revoke a physician's license. This contention is meritless. If the determination of the reviewing court is in favor of the petitioner, judgment is entered commanding the respondent agency to set aside its order or decision. *See* Cal.Civ.Proc.Code § 1094.5(f). "Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment ... but the judgment shall not limit or control in any way the discretion legally vested in the respondent." *See id.* The California superior court is fully capable of adjudicating and protecting Kenneally's constitutional rights. *See also Franz v. Board of Medical Quality Assurance*, 31 Cal.3d 124, 181 Cal.Rptr. 732, 741, 642 P.2d 792, 801 (1982) (section 1094.5(b) gives the superior court original jurisdiction to decide whether there was a fair trial and the agency proceeded in the manner required by law).

Board staff members in responses to letters of inquiry from county and state legislators, and by the Board's refusal to settle the accusation against him.

### a. Statements by Staff Members

■ After the accusation was filed against Kenneally, various county and state legislators wrote letters to the Board inquiring about the status of his case. Kenneally characterizes these letters as "political pressure." An official of the Board answered each inquiry. Kenneally contends that statements made by Kenneth Wagstaff, Executive Director of the Board, and Vernon Leeper, Wagstaff's Enforcement Program Manager, in response to these letters show the administrative agency is biased against him. We disagree.

None of the objectionable statements to which Kenneally refers was made by a member of the Medical Quality Division of the Board ("the Division"). The Division is the branch of the Board that decides whether to revoke a physician's license. *See Franz*, 181 Cal.Rptr. at 736 n. 3, 642 P.2d at 796 n. 3. The Division consists of seven of the Board's nineteen members. Neither Wagstaff nor Leeper is a member of the Division and neither has any role in deciding whether to revoke a physician's license, or in selecting an appropriate penalty. Kenneally has not shown how the statements of Wagstaff and Leeper may be attributed to members of the Division who will decide Kenneally's case. *See Milgard Tempering, Inc. v. Selas Corp.*, 902 F.2d 703, 714–15 (9th Cir.1990) (judge's law clerk, not the judge, was disqualified because of bias, and the taint of the law clerk did not apply to the judge).

### b. Board's Refusal to Settle

■ Kenneally argues that the Division's rejection of his proposed settlement offer indicates that it is biased because the settlement would have been accepted but for the political pressure on the Division. This argument lacks merit. Wagstaff and Leeper testified that the Division has accepted settlement proposals in other politically sensitive cases. Kenneally presented no evidence to the contrary. Moreover, he presented no evidence to link the Division's rejection of his settlement offer to the political pressure he alleges was exerted on the Board.

Kenneally also argues that the Division's refusal to attempt to reach a settlement with him violated the requirement of California Business & Professions Code § 2229(b), which requires the Division to take action to aid in the rehabilitation of a licensee in exercising its disciplinary authority. He asserts this is yet another circumstance which demonstrates the Board's bias. We reject this argument.

California Business & Professions Code § 2229(b) requires that "[i]n exercising its disciplinary authority the Division of Medical Quality ... shall, wherever possible, take action as is calculated to aid in the rehabilitation of the licensee...." Cal. Bus. & Prof.Code § 2229(b) (West 1990 and Supp.1992). However, section 2229(a) provides that "[p]rotection of the public shall be the highest priority for the Division of Medical Quality ... in exercising its disciplinary authority." Cal.Bus. & Prof.Code § 2229(a) (West 1990 and Supp.1992). When the Division's highest priority is protection of the public, the Division's refusal to settle, standing alone, cannot be construed as an indication of bias.

### C. District Court's Failure to Hold Evidentiary Hearing

Kenneally contends the district court denied him due process in violation of the fifth amendment when it denied his request for a preliminary injunction and dismissed his action without first affording him an evidentiary hearing. We reject this argument.

■ We do not indulge a presumption in favor of evidentiary hearings. *International Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 554–55 (9th Cir.1986); *but see Sims v. Greene*, 161 F.2d 87, 88–89 (3d Cir.1947). "[I]f the facts are simple and little time would be taken, a court may be required to hold an evidentiary hearing on a motion for an injunction.... However, we have re-

jected any presumption in favor of evidentiary hearings, especially if the facts are complicated." *United States v. Oregon,* 913 F.2d 576, 582 (9th Cir.1990), *cert. denied sub nom. Makah Indian Tribe v. United States,* — U.S. —, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991).

■ At the hearing on the application for a temporary restraining order, the district court ordered the parties to take the depositions of seven witnesses. Approximately 765 pages of witness testimony and 83 separate exhibits were filed with the court. At the subsequent hearing to consider the question of *Younger* abstention, the court allowed counsel 2½ hours of oral argument. During that hearing, Kenneally asked the court to take oral testimony from several witnesses who were present and who were prepared to testify on the bad faith exception to *Younger* abstention. The court refused to hear this proffered oral testimony. In so doing, the court did not abuse its discretion. *See San Francisco–Oakland Newspaper Guild v. Kennedy,* 412 F.2d 541, 546 (9th Cir.1969) (court did not abuse its discretion in refusing to permit oral testimony when presentation of many affidavits and oral argument provided sufficient opportunity for opposition to preliminary injunction).

AFFIRMED.

**Myron R. STAHL, Plaintiff–Appellant,**

v.

**GIBRALTAR FINANCIAL CORPORATION, Defendant–Appellee.**

No. 89–55943.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1992.

Decided June 18, 1992.