17 F.3d 1244
 John A. AIONA, Jeton Lee Allen, Martin Andrews, Terry J.
Bateman, Tamara Bray, Lynette Ching, Cory Chock, Michael A.
Ilaszcat, David L. Kelly, Charles Kernan, William Milovich,
Dan S. Okamura and Michael A. Willard, individually and on
behalf of all persons similarly situated, Plaintiffs-Appellants,
v.
The JUDICIARY OF the STATE OF HAWAII; Irwin Tanaka,
Administrative Director of Courts of the Judiciary of the
State of Hawaii, individually and in his official capacity;
Ronald Sakata, Director of the Administrative Driver's
License Revocation Office of the Judiciary of the State of
Hawaii, individually and in his official capacity; Michael
Nakamura, Chief of the Honolulu Police Department of the
City and County of Honolulu, individually and in his
official capacity, Defendants-Appellees.
 No. 92-15810.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 1, 1993.
Decided March 3, 1994.
 
 Arthur E. Ross, Honolulu, Hawaii, for plaintiffs-appellants.
 Girard D. Lau, Deputy Attorney General, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before: POOLE, WIGGINS and T.G. NELSON, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 John Aiona and twelve other persons appeal the district court's dismissal of their 42 U.S.C. Sec. 1983 action challenging the constitutionality of Hawaii's "Administrative Revocation of Driver's License" statute, Haw.Rev.Stat. Sec. 286-251 et seq. The plaintiffs, whose drivers' licenses were revoked under the statute for driving while intoxicated, sought declaratory and injunctive relief. The district court dismissed the action on the grounds that (1) the claims of eight of the plaintiffs were moot because their license revocations were rescinded during state court proceedings and (2) it was required to abstain under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), from hearing the claims of the remaining five plaintiffs.
 
 
 2
 We review de novo the district court's dismissal of the action as moot. Sample v. Johnson, 771 F.2d 1335, 1338 (9th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986). We also review de novo the district court's decision to abstain under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Kenneally v. Lungren, 967 F.2d 329, 331 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). We affirm.
 
 
 3
 * Effective August 1, 1991, the Hawaii legislature enacted an "Administrative Revocation of Driver's License" statute providing for the administrative revocation of driver's licenses of persons arrested for driving while intoxicated. Haw.Rev.Stat. Sec. 286-251 et seq.; see id. Sec. 291-4 (person drives while intoxicated when his blood alcohol concentration is .10 or more). The administrative revocation statute is separate from any criminal prosecution. Haw.Rev.Stat. Sec. 286-253. For example, evidence from the administrative proceedings may not be introduced against a defendant in the criminal proceedings. Id. The purpose of the administrative revocation statute is to remove suspected drunk drivers from the road immediately. Session Laws of Hawaii, Act 188, Section 1.
 
 
 4
 Under the administrative license revocation statute, whenever a person is arrested for driving while intoxicated in violation of section 291-4, the arresting officer immediately takes the person's driver's license if he determines that (1) there was reasonable suspicion to stop the vehicle, or the vehicle was stopped at an intoxication control roadblock, and (2) there was probable cause that the person was driving while under the influence of intoxicating liquor. Haw.Rev.Stat. Sec. 286-255.
 
 
 5
 Drivers do not lose their driving privileges immediately. Under the statute, the arresting officer issues a "notice of administrative revocation" which serves as a temporary thirty-day driving permit. Id.[1] The officer then must inform the driver that he has the option of taking a breath test, a blood test, or both. Id. If a test is administered and shows a blood alcohol concentration of less than .10, the license is returned to the arrestee immediately, and the administrative revocation proceedings are terminated with prejudice. Id. Sec. 286-256. If the arrestee fails the test, or refuses to take the test, then the license revocation is automatically reviewed by the administrative director of the courts. Id. Sec. 286-258.
 
 
 6
 The arrestee has the right to submit a written statement to the director within three days of his arrest stating reasons why his license should not be revoked. Id. Sec. 286-258(b). The director automatically reviews the notice of administrative revocation, considering any sworn or unsworn statement provided by the arrestee, the breath or blood test results, if any, and the sworn statements of the law enforcement officials involved. Id. Sec. 286-258(c).[2] The director may uphold the license revocation only if he determines that (1) there was reasonable suspicion to stop the vehicle or the vehicle was stopped at an intoxication roadblock, (2) there was probable cause to believe that the arrestee was driving while intoxicated, and (3) the evidence proves by a preponderance that the arrestee did operate the vehicle with a .10 blood alcohol concentration or refused a blood alcohol test. Id. Sec. 286-258(d). The director must mail to the arrestee a written decision administratively revoking the license or rescinding the revocation no later than eight days after the date of arrest. Id. Sec. 286-258(a).
 
 
 7
 If the director upholds the revocation, then the driver may request a full administrative hearing within five days from the date the decision is mailed. Id. Sec. 286-259(a).[3] The hearing must be scheduled within twenty-five days of the arrest. Id. At the hearing, the arrestee may be represented by counsel and may submit evidence, testify, and present and cross-examine witnesses. Id. Secs. 286-259(b), 286-258(f).[4] The director may affirm the license revocation only if, after considering all of the evidence, he again determines that three factors exist: reasonable suspicion to stop the vehicle, probable cause that the driver was intoxicated, and a preponderance of evidence that the driver had a .10 blood alcohol concentration or declined a blood test. Id. Sec. 286-259(e). Within five days of the hearing, the director must issue his decision. Id. Sec. 286-259(i). Thus, the director issues his decision within thirty days from the arrest, or before the temporary permit expires.[5]
 
 
 8
 The driver then may seek judicial review, which must be scheduled "as quickly as is practicable." Id. Sec. 286-260. The court cannot stay the license revocation during its review, which is based only on the administrative record and is limited to whether the director "exceeded constitutional or statutory authority, ... acted in an arbitrary and capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record." Id. Although the court cannot stay the license revocation, the director may issue a conditional driving permit, effective after a mandatory thirty-day license suspension, to drivers with no prior "alcohol enforcement contacts" who need to drive for work or to substance abuse treatment. Haw.Rev.Stat. Sec. 286-264.
 
 
 9
 Aiona and the twelve other plaintiffs in this case all were arrested for driving while intoxicated and had their licenses revoked by the arresting officer. Eight plaintiffs had their revocations rescinded: two at the administrative review stage and six following review by the state court within seventy days of the date their petitions for review were filed. The five remaining plaintiffs had their revocations affirmed by the state court within ninety days of the date their petitions for judicial review were filed. Three plaintiffs appealed the state court decisions affirming the revocations to the Hawaii Supreme Court on January 17, 1992. On August 9, 1993, the Hawaii Supreme Court upheld the revocations of two of the three plaintiffs and rejected their constitutional challenges. Kernan v. Tanaka, 75 Haw. 1, 856 P.2d 1207 (1993).
 
 
 10
 On October 7, 1991, while state proceedings were pending, the thirteen plaintiffs filed this 42 U.S.C. Sec. 1983 action challenging the constitutionality of Hawaii's administrative revocation statute. The district court dismissed the action on April 28, 1992. The plaintiffs timely appeal.
 
 II
 
 11
 Eight of the plaintiffs in this case had their revocations rescinded during the administrative revocation proceedings or by the state court during judicial review of the administrative proceedings. We agree with the district court that these plaintiffs' claims are moot. See Sample, 771 F.2d at 1338.[6]
 
 
 12
 The plaintiffs nevertheless argue that their claims are not moot because a declaratory judgment would expunge the damage to their reputations. This argument is meritless. These plaintiffs already received a declaration in state court that their revocations were improper.
 
 
 13
 The plaintiffs also argue that their claims are not moot because they are capable of repetition yet evading review. This exception applies if two conditions are satisfied: the challenged action is too short to be fully litigated before its cessation, and there is a reasonable expectation that the complaining party will be subjected to the same action again. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). These conditions do not exist here.
 
 III
 
 14
 The remaining plaintiffs contend that the district court should not have abstained under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), from hearing their due process challenge to the administrative revocation statute because the statute does not provide a timely opportunity for them to raise constitutional claims.
 
 
 15
 Under the Younger abstention doctrine, a federal court in most circumstances may not interfere with pending state criminal or civil proceedings, including state administrative proceedings. Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); Ronwin v. Dunham, 818 F.2d 675, 677-78 (8th Cir.1987) (administrative proceeding regarding suspension of driver's license for speeding). Abstention is appropriate in favor of state proceedings if (1) the state proceedings are ongoing, (2) the proceedings implicate important state interests, and (3) the state proceedings provide the plaintiff an adequate opportunity to litigate federal constitutional questions. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); accord Fresh Int'l Corp. v. Agricultural Labor Relations Bd., 805 F.2d 1353, 1357-58 (9th Cir.1986). If these three circumstances exist, then "a district court must dismiss the federal action ... [and] there is no discretion to grant injunctive relief." Fresh Int'l Corp., 805 F.2d at 1356 (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976)).
 
 
 16
 If, however, the plaintiff can show that the state proceedings were instituted in bad faith, or if other extraordinary circumstances exist, then the federal court should not abstain. Younger, 401 U.S. at 53-54, 91 S.Ct. at 755. For example, if a statute "flagrantly and patently" violates "express constitutional prohibitions in every clause, sentence and paragraph," then federal intervention in state court proceedings is appropriate. Id.
 
 
 17
 Here, state administrative proceedings and judicial proceedings were ongoing at the time the plaintiffs filed this section 1983 action, and the plaintiffs do not contest that the state has an important state interest in keeping drunk drivers off the road.[7] Thus, the first two prongs of the Younger test are met.
 
 
 18
 In addition, the third prong of the abstention inquiry--the adequacy of opportunity to raise constitutional issues--is satisfied by the plaintiffs' ability to raise constitutional claims during judicial review of the administrative proceeding. Haw.Rev.Stat. Sec. 286-260 (court may review whether director exceeded constitutional or statutory authority); see Dayton Christian Schools, 477 U.S. at 629, 106 S.Ct. at 2724 (even if constitutional claims cannot be raised in an administrative proceeding, it is "sufficient ... [that they] may be raised in state court judicial review of the administrative proceeding"); Partington v. Gedan, 880 F.2d 116, 124 (9th Cir.1989) (same), vacated in part on other grounds, 497 U.S. 1020, 110 S.Ct. 3265, 111 L.Ed.2d 776 (1990).[8]
 
 
 19
 The plaintiffs nevertheless contend that the district court should not have abstained under Younger because the statute's failure to specify a time for judicial review violates their due process right to either immediate judicial review of the administrative proceedings or a stay of the revocation pending judicial review. See Haw.Rev.Stat. Sec. 286-260 (providing that judicial review shall be scheduled "as quickly as is practicable"). This due process violation, they argue, is an "extraordinary circumstance" rendering Younger abstention inappropriate.
 
 
 20
 This argument is not persuasive. Although delay in the process used to evaluate a deprivation of property may violate due process at some point, see Mackey, 443 U.S. at 11, 99 S.Ct. at 2617, that is not the case here. The state court issued its decisions regarding the license revocations within ninety days from the date the petitions for review were filed, and in many cases, it issued its decisions much earlier. Cf. FDIC v. Mallen, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (statute authorizing FDIC to suspend indicted bank officials from job comports with due process; statute provided for postsuspension hearing within thirty days from official's request and final decision within sixty days from the hearing).
 
 
 21
 Given the promptness of the state court's resolution of their petitions for review, the plaintiffs can argue only that due process is violated because the Hawaii statute, which fails to specify a time during which judicial review must be completed, allows the potential for delay. See Haw.Rev.Stat. Sec. 286-260 (judicial review must be held "as quickly as is practicable"). In Dixon v. Love, however, the Supreme Court upheld as constitutionally sufficient an Illinois license revocation statute containing similar language regarding administrative review. See 431 U.S. 105, 107, 112-15, 97 S.Ct. 1723, 1724, 1727-29, 52 L.Ed.2d 172 (1977). The Illinois statute provided that a driver's license could be revoked without a preliminary hearing if a driver committed certain offenses but required the state, within twenty days after the driver's request, to schedule a full evidentiary hearing for a date "as early as practical." Id. at 107-10, 97 S.Ct. at 1724-26. The Illinois statute, like the Hawaii statute, provided for hardship relief for persons who needed to drive for work. Id. at 110 n. 7, 97 S.Ct. at 1726 n. 7. Although hardship relief under the Hawaii statute is available only after a mandatory thirty-day license suspension, see Haw.Rev.Stat. Sec. 286-264, drivers in Illinois have no guarantee of immediate postsuspension hardship relief, either. See Dixon, 431 U.S. at 114 n. 10, 97 S.Ct. at 1726 n. 10.
 
 
 22
 Thus, if administrative review that is held "as soon as practical" satisfies due process, certainly the Hawaii statute's provision that judicial review be held "as soon as is practicable" does not violate due process, especially when a full administrative hearing is held within twenty-five days of arrest. Due process does not require immediate judicial review of constitutional claims following license revocations when hardship relief is available and when the administrative revocation scheme itself comports with due process. See Mackey, 443 U.S. at 15 n. 8, 99 S.Ct. at 2619 n. 8 (like the Hawaii administrative proceedings, the Massachusetts administrative proceedings involved review only of the factual predicates underlying the revocation; Supreme Court attached no significance to the fact that legal challenges to license suspensions would be heard only on judicial review during some indefinite period following the suspensions); Dixon, 431 U.S. at 110, 97 S.Ct. at 1726 (same).[9]
 
 
 23
 In sum, the extraordinary circumstances warranting federal intervention in state proceedings do not exist here, and the district court properly abstained.[10]
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The notice also informs the arrestee that his license is being revoked and provides information regarding the arrest, the offense, and the administrative review process. Haw.Rev.Stat. Secs. 286-254 (contents of notice); 286-255 (arrest procedures)
 
 
 [2]
 The arresting officer must submit a sworn statement with facts establishing that (1) there was reasonable suspicion to stop the vehicle or it was stopped at an intoxication roadblock, (2) there was probable cause to believe that the arrestee was driving while intoxicated, (3) the arrestee was informed that criminal charges could be filed and the consequences of refusing to be tested for intoxication, and (4) the arrestee agreed or refused to be tested. Haw.Rev.Stat. Secs. 286-257(a)(1), (b)(2). If the arrestee agreed to testing, the person maintaining the testing equipment and the tester must submit sworn statements that they were trained, used a state-approved alcohol testing device that had been properly maintained and was in good working order, and administered the test properly to the arrestee. Id. Sec. 286-257(a)(2-3)
 
 
 [3]
 If the driver fails to request a hearing within five days, then the license revocation takes effect. Haw.Rev.Stat. Sec. 286-258(g). The driver may request a hearing, however, within sixty days of his arrest, and a hearing must be scheduled within thirty days of the request. Id
 
 
 [4]
 The director's prior decision notifies the driver of the availability of a hearing, the procedures for obtaining a hearing, and his ability to present evidence and be represented by counsel. Haw.Rev.Stat. Sec. 286-258(f)
 
 
 [5]
 If the director continues the hearing on his own, then the temporary permit is extended for the length of the continuance. Haw.Rev.Stat. Sec. 286-259(j). If the hearing is continued at the request of the driver, then the director cannot extend the temporary permit. Id
 
 
 [6]
 In addition, the claims of four of the five remaining plaintiffs probably are moot. Their revocations became final while federal proceedings were pending. Because the plaintiffs, who sought only declaratory and injunctive relief, wanted only an opportunity to adjudicate their constitutional challenges to the revocations and because the state court addressed their constitutional challenges, this court can provide no relief, and the claims are moot. See Sample, 771 F.2d at 1338
 
 
 [7]
 In any event, the state does have an important state interest in keeping drunk drivers off the road. See Middlesex Ethics Comm., 457 U.S. at 434, 102 S.Ct. at 2552 (state has strong interest in attorney disciplinary proceedings); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-05, 95 S.Ct. 1200, 1208-09, 43 L.Ed.2d 482 (1975) (state has strong interest in non-criminal obscenity abatement action; importance of state interest demonstrated by the fact that proceedings were "in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials"); Ronwin, 818 F.2d at 677-78 (important state interest in suspension of driver's licenses for speeding to maintain safety of highways); see also Mackey v. Montrym, 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979) (strong state interest in safety of public highways; case did not involve abstention)
 
 
 [8]
 Two district court cases cited by the plaintiffs do not support a contrary conclusion. In Thomas v. Fiedler, 700 F.Supp. 1527, 1536-38 (E.D.Wis.1988), appeal dismissed, 884 F.2d 990 (7th Cir.1989), the district court did not abstain from reviewing a Wisconsin administrative revocation statute, in part because many judges did not accept constitutional issues for judicial review, different judges gave different levels of scrutiny to the administrative proceedings, and judges delayed reviewing the administrative proceedings. Similarly, the court in Gonzalez v. Franklin County Mun. Court, 595 F.Supp. 382 (S.D.Ohio 1984), did not abstain, holding that the plaintiffs' ability to raise constitutional claims on judicial review was uncertain because the license suspension was not a final, appealable order. Id. at 385-86 ("[i]f a person is acquitted of the criminal charges, his ability to then appeal the license suspension is dubious at best"). In contrast, under the Hawaii statute drivers can raise constitutional issues on judicial review of the license revocation. Haw.Rev.Stat. Sec. 286-260. Indeed, after Wisconsin amended its statute to provide for judicial review of constitutional issues, the Seventh Circuit held on appeal that the amended statute comported with due process and rendered the appeal moot. Thomas, 884 F.2d at 995-96
 
 
 [9]
 The Hawaii statute generally comports with due process. Drivers do not lose their licenses immediately; they receive a temporary thirty-day driving permit. Haw.Rev.Stat. Sec. 286-255. Prompt administrative review of the three factual predicates underlying the license suspension (reasonable suspicion to stop the car, probable cause that the driver was intoxicated, and blood alcohol test) is completed within eight days of the arrest. Id. Sec. 286-258. A full administrative hearing is available within twenty-five days of arrest, and the final administrative decision is rendered within five days of the hearing, or before the temporary permit expires. Id. Sec. 286-259. This pre-suspension procedure provides more protection than the postsuspension procedure upheld in Dixon and the prompt postsuspension hearing upheld in Mackey v. Montrym. See Mackey, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (upholding Massachusetts law requiring ninety-day suspension of driver's license for failure to take breath-analysis test when prompt post-deprivation administrative hearing before Registrar of Motor Vehicles was available)
 
 
 [10]
 We reject the plaintiffs' contention that the district court abused its discretion by denying their motion for class certification. Any possible plaintiffs either would have license revocation proceedings pending in state court, in which case Younger abstention applies, or would be collaterally attacking final state judgments, in which case the Rooker/Feldman doctrine applies. See MacKay v. Pfeil, 827 F.2d 540, 543-45 (9th Cir.1987)