**Bob BAFFERT, Plaintiff–Appellee,**

v.

**CALIFORNIA HORSE RACING BOARD; Roy C. Wood, Jr., in his capacity as Executive Director of the California Horse Racing Board; and John C. Harris, Sheryl L. Granzella, Marie G. Moretti, Alan W. Landsburg;**

---

William A. Bianco, and Roger H. Licht, in D.C. No. their official capacities as members of the California Horse Racing Board, Defendants–Appellants,

and

Robert H. Tourtelot, in his official capacity as a member of the California Horse Racing Board, Defendant.

Nos. 02–55858, 02–56135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2003.

Filed June 6, 2003.

Jerald L. Mosley, Deputy Attorney General, Los Angeles, California, for the defendants-appellants.

Neil Papiano, Iverson, Yoakum, Papaino & Hatch, Los Angeles, California, for the plaintiff-appellee.

Before SCHROEDER, Chief Judge, GRABER, Circuit Judge, and SINGLETON,* District Judge.

**OPINION**

GRABER, Circuit Judge.

An administrative proceeding conducted under the authority of the California

* The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

Horse Racing Board ("the Board") resulted in an order suspending, for 60 days, Plaintiff Bob Baffert's license to race horses in California. While his appeal from the suspension order was pending, Plaintiff filed this action under 42 U.S.C. § 1983, seeking to enjoin the state proceedings on the ground that the Board had failed to preserve evidence to which Plaintiff was constitutionally entitled. The Board argued that the principles of *Younger* abstention[1] required the district court to decline jurisdiction. The district court nevertheless decided the case. Because we agree with the Board that *Younger* abstention applies, we reverse and remand with instructions to dismiss.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff trains thoroughbred racehorses. Defendants are the Board,[2] which is the administrative body charged with overseeing horse racing in California, and its individual members.

On May 3, 2000, "Nautical Look," a horse trained by Plaintiff, won the seventh race at the Hollywood Park racetrack. As California's regulations require, the track veterinarian took blood and urine samples from the horse. One half of each sample, the "official sample," was sent to a laboratory for testing. The Board retained the other half of each sample, known as the "split samples," which are kept for the purpose of confirming a positive drug test on the official samples. Both the official sample and the split sample of Nautical Look's urine tested positive for trace amounts of morphine.

Several months later, a panel of three Stewards, appointed by the Board, held a formal hearing to consider a complaint against Plaintiff arising from the drug testing of Nautical Look. Plaintiff argued that the presence of such a small trace of morphine in the horse's urine likely was explained by environmental contamination. Environmental contamination is a defense under California regulations, but that defense may be rebutted by evidence that the trainer did not reasonably ensure the horse's protection from such contamination. Extensive evidence was taken on these issues.

At the hearing, Plaintiff learned that the Board had tested only the urine samples. The blood samples had been destroyed. The official blood sample was destroyed pursuant to an August 1999 policy of destroying one-third of all the blood samples submitted to the laboratory. When no request for testing of the split blood sample was made within the 45–day period after the race during which the split sample remained in the Board's custody, that sample was "purged" due to its age.

Following the hearing, the Stewards concluded that Plaintiff "did not meet the standards of mitigating circumstances as set forth in Rule 1888(c) (Defense to Trainer Insurer Rule)" and, thus, that he had violated "California Horse Racing Board rules # 1843(a) (Medication, Drugs and Other Substances—Morphine—Class I) and # 1887 (Trainer to Insure Condition of Horse)." The Stewards ordered that Plaintiff's license be suspended for 60 days. Plaintiff timely appealed that decision to the Board. He also obtained a stay

---

1. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

2. Because we hold that the district court erred in exercising jurisdiction over this entire action, we do not address the Board's contentions that it is immune under the Eleventh Amendment and is not a proper defendant for purposes of § 1983.

of the suspension pending resolution of the appeal.

While the state administrative appeal was pending, however, Plaintiff filed this federal action under 42 U.S.C. § 1983 against the Board and its members in their official capacities. The federal complaint alleges that Defendants violated Plaintiff's due process rights by failing to preserve the blood samples taken from Nautical Look on May 3, 2000. Defendants argued that *Younger* abstention required dismissal. The district court disagreed. The court granted a preliminary injunction and then, on summary judgment, a permanent injunction in favor of Plaintiff, and awarded attorney fees to Plaintiff.

The Board now brings this timely appeal. We reverse and remand with instructions to vacate the award of fees and to dismiss the action.

### STANDARD OF REVIEW

■ We review de novo whether *Younger* abstention applies. *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir.) (en banc), *cert. dismissed*, 533 U.S. 966, 122 S.Ct. 4, 150 L.Ed.2d 787 (2001).

■ We also review de novo whether a party is statutorily entitled to attorney fees. *Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir.1999).

### DISCUSSION

#### A. *Abstention*

■ *Younger* abstention is a "circumscribed exception to mandatory federal jurisdiction," which applies when there is a pending state proceeding that implicates important state interests and provides the federal plaintiff with an opportunity to raise federal claims. *Green*, 255 F.3d at 1099. If the circumstances giving rise to

*Younger* abstention apply, the district court must dismiss the action. *Id.* at 1093.

■ As a threshold matter, for *Younger* abstention to apply, the federal relief sought must interfere in some manner with the state litigation. *Id.* at 1094. Next, in determining whether abstention is proper, the court must examine:

(1) The nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in state proceedings.

*Kenneally v. Lungren*, 967 F.2d 329, 331 (9th Cir.1992) (internal quotation marks omitted). Finally, an exception to abstention applies if the state proceedings demonstrate "bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate." *Id.* at 332 (internal quotation marks omitted).

Here, Plaintiff seeks to enjoin state administrative proceedings, so there is "no doubt" that the federal injunctive relief would interfere directly with those proceedings. *Green*, 255 F.3d at 1095–96. The parties agree that state proceedings were ongoing. We turn, then, to the remaining considerations.

1. *The state proceedings implicate important state interests.*

■ *Younger* abstention applies to actions seeking to enjoin pending state administrative proceedings (as well as state court proceedings) if an important state interest is involved. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,

457 U.S. 423, 433–34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*"NOPSI "*).

California's interest in protecting the integrity of horse racing is expressed in legislation, which is intended to allow pari-mutuel wagering on horse races, while:

> (a) Assuring protection of the public.
>
> (b) Encouraging agriculture and the breeding of horses in this state.
>
> (c) Supporting the network of California fairs.
>
> (d) Providing for maximum expansion of horse racing opportunities in the public interest.
>
> (e) Providing uniformity of regulation for each type of horse racing.

Cal. Bus. & Prof.Code § 19401 (West 2003). Further, the legislature specifically requires the Board to adopt "equine medication" regulations in order to "preserve and enhance the integrity of horse racing in the state." *Id.* § 19580. Preserving the integrity of racing is a significant interest, especially in view of the fact that California permits wagering on horse racing. *See id.* § 19594; *see also id.* § 19461, notes (signing message from Gov. Gray Davis identifying thoroughbred horse racing as "one of California's premier sporting industries").

Whether the state proceedings are "judicial in nature" or "quasi-criminal" also plays a role in assessing the significance of the state interest. *See Ohio Civil Rights Comm'n,* 477 U.S. at 627–28 & n. 2, 106 S.Ct. 2718 (addressing significance of requirement that the proceedings be "judicial in nature"); *Pennzoil Co. v. Texaco,*

*Inc.,* 481 U.S. 1, 13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (quoting *Juidice v. Vail,* 430 U.S. 327, 335, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), discussing application of *Younger* to "quasi-criminal" proceedings); *see also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (holding that *Younger* abstention extends to a state civil proceeding "which in important respects is more akin to a criminal prosecution than are most civil cases").

Here, the Board held an adjudicatory hearing, which is quasi-judicial. Both sides were represented by counsel. Because a license was at issue and could be suspended or revoked, the state proceedings also were "quasi-criminal." The state's interest in administering such proceedings without interference is thus significant. *Id.* Indeed, Plaintiff does not argue that the state's interest in licensing procedures concerning horse racing are less important, or less "judicial," than licensing procedures concerning lawyers or doctors. *See Middlesex,* 457 U.S. at 437, 102 S.Ct. 2515 (applying abstention doctrine in view of pending administrative proceedings to revoke a lawyer's license); *Kenneally,* 967 F.2d at 330–31 (applying abstention doctrine in view of pending administrative proceedings to revoke a physician's license).

2. *The state proceedings provide an adequate opportunity to litigate Plaintiff's constitutional claim.*

Plaintiff primarily argues that the state proceedings do not provide an adequate opportunity to litigate his federal claims. Distilling his arguments to their essentials, he contends that (a) immediate federal review is necessary because the constitutionality of the proceedings themselves is at issue, so applying abstention would disregard the remedial purposes of § 1983; and

(b) the multi-layered review of administrative decisions in the state forum will take too long. Established law forecloses those arguments.

    (a) *Younger* abstention applies even if the constitutionality of the pending proceedings is at the heart of Plaintiff's claim.

The Supreme Court has "repeatedly rejected the argument that a constitutional attack on state procedures themselves automatically vitiates the adequacy of those procedures for purposes of the Younger–*Huffman* line of cases." *Ohio Civil Rights Comm'n,* 477 U.S. at 628, 106 S.Ct. 2718 (internal quotation marks omitted). "[T]he mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *NOPSI,* 491 U.S. at 365, 109 S.Ct. 2506. *Younger* itself involved a First Amendment challenge to an ongoing criminal prosecution, but even that was insufficient to require the federal court to ignore principles of federalism and interfere with the state's proceedings. *Younger,* 401 U.S. at 43–45, 91 S.Ct. 746.

■ Nonetheless, Plaintiff literally claims that "[t]he only competent figure to rule on Constitutional issues ... is a Federal Judge." Although we appreciate the vote of confidence, *Younger* and its progeny repeatedly and explicitly hold to the contrary. *See Middlesex,* 457 U.S. at 431, 102 S.Ct. 2515 ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."). Saddled with these precedents, Plaintiff's arguments cannot succeed. The substance of Plaintiff's claim does not justify federal interference.

    (b) *California's administrative process provides sufficient judicial review so as to constitute an ade-quate forum to litigate federal constitutional issues.*

Plaintiff next claims that California's procedures for judicial review of an administrative decision are "layered and redundant" and will not provide a "timely" resolution to his federal claims. Thus, he contends, the proceedings are "inadequate." "[T]he burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [his] claims." *Pennzoil Co.,* 481 U.S. at 14, 107 S.Ct. 1519 (internal quotation marks omitted). We must assume that state procedures afford an adequate remedy, in the absence of unambiguous authority to the contrary. *Id.* at 15, 107 S.Ct. 1519. Plaintiff's allegations of redundancy and delay do not rise to the level of a procedural bar in this case.

Notably, the proceedings affording judicial review of the Board's decision are not peculiar to that administrative body. To the contrary, Plaintiff's challenge amounts to an attack on California's administrative review procedures as a whole. *See* Cal. Gov't Code § 11517 (West 2003) (providing for appeals from administrative adjudications); Cal.Civ.Proc.Code § 1094.5 (West 2003) (providing procedures for writ of mandate for judicial review of administrative orders).

In *Kenneally,* we held that California offers an adequate opportunity for judicial review of administrative orders and that *Younger* abstention therefore applied to a physician's civil rights action challenging the revocation of his license. 967 F.2d at 332–33. *Kenneally* presented an even stronger case than Plaintiff's for concluding that the state procedures were inadequate, because it involved a challenge to the constitutionality of a particular regulation, which California's constitution explicitly precludes administrative bodies from adjudicating. *Id.* at 332. Despite Ken-

neally's inability to obtain redress at the administrative level, we applied *Ohio Civil Rights Commission* and held that the procedure for a writ of mandate offered an adequate opportunity for judicial review of the constitutional claims. *Id.* at 332–33.

By contrast, Plaintiff's federal claims do not attack a regulation or statute as unconstitutional. Rather, he attacks specific evidentiary practices in his case that he asserts amounted to a violation of his due process rights. Plaintiff's claims thus concern the administrative agency's "competence to examine evidence before them in light of constitutional standards." *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*, 683 F.2d 1229, 1234 (9th Cir.1982) (internal quotation marks omitted). Although California's constitutional provisions explicitly preclude challenges to the constitutionality of a regulation in administrative proceedings, those provisions do not affect the competence of an administrative judge to examine evidence in the light of constitutional standards. *Id.*; *Kenneally*, 967 F.2d at 332. Unlike the plaintiff in *Kenneally*, Plaintiff can bring, and has brought, his claims of constitutional error to the attention of the administrative body on appeal. If the Stewards' decision is upheld, Plaintiff will have another chance to bring those claims to the superior court in a writ of mandate. The superior court's decision, if unfavorable, may then be appealed all the way through the California court system. Cal.Civ.Proc. Code § 1094.5. If Plaintiff remains dissatisfied with the state courts' treatment of his federal claims, he may seek certiorari in the United States Supreme Court. *See generally Murdock v. City of Memphis*, 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1874) (discussing Supreme Court's scope of review of questions decided by the highest state courts).

Plaintiff contends that this procedure will take too long. A bald assertion that state proceedings are lengthy does not eliminate the grounds for *Younger* abstention. As the Supreme Court has made clear, only when the timeliness issue amounts to a procedural bar do we decline to abstain due to the inadequacy of the forum. *Pennzoil Co.*, 481 U.S. at 15, 107 S.Ct. 1519. Although there are instances in which timeliness plays a role in the adequacy of a state forum, Plaintiff's case is not one of them.

In *Meredith v. Oregon*, 321 F.3d 807, 818 (9th Cir.2003), for example, we decided that the "unique posture of [the] case" rendered the state forum inadequate on timeliness grounds. (Internal quotation marks omitted.) The plaintiff in *Meredith* established that the peculiar facts of his case interacted with the unavailability of a stay of the state court judgment in such a way that the state courts would *never* have an opportunity to address his federal claims in a meaningful way. *Id.* at 818–19. Because the plaintiff's federal claim involved new evidence that the state forum was barred from reviewing, and the applicable stay procedures would have required the plaintiff to suffer all the consequences of the state's administrative decision before any review of his federal claims had taken place, we concluded that Oregon's administrative procedures in that particular case operated as a complete procedural bar to review of his federal claims. *Id.*

By contrast, here, Plaintiff can litigate his claims fully in the state forum. He has not shown that he will be forced to serve his suspension before he has had a chance to adjudicate his federal claims in the state forum. To the contrary, until the district court entered an injunction below, the state court had stayed Plaintiff's suspension pending his appeal. Plaintiff has yet to serve the 60–day suspension, and there

is no reason to think that he will be forced to do so before his appeal is heard in the state forum.

Plaintiff obviously disagrees vigorously with the result that he has achieved thus far in California. However, his lack of success does not render the forum inadequate. Because Plaintiff's case fits cleanly within the criteria for abstaining under *Younger*, the district court was obliged to decline jurisdiction unless some exception applied.

### 3. *No exception applies.*

█ If state proceedings are conducted in bad faith or to harass the litigant, or other extraordinary circumstances exist, the district court may exercise jurisdiction even when the criteria for *Younger* abstention are met. *See Gibson v. Berryhill*, 411 U.S. 564, 578–79, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (holding that *Younger* abstention did not apply to a suit to enjoin a proceeding before an administrative board that had a pecuniary interest in the outcome); *Partington v. Gedan*, 961 F.2d 852, 861 (9th Cir.1992) (referring to the " 'bad faith and harassment' exception" to *Younger* abstention).

### (a) *No bad faith is present.*

█ The district court declined to abstain because it concluded that the Board's prosecution was in bad faith. In the *Younger* abstention context, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Plaintiff cannot meet that standard.

█ The Board had a reasonable expectation of obtaining a valid "conviction." In California, the trainer "is the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of third parties." Cal.Code

Reg. tit. 4, § 1887(a) (West 2003). If a sample of bodily fluid taken from a horse tests positive, that test is prima facie evidence that the trainer has been negligent in the care of the horse and is prima facie evidence that the drug found has been administered to the horse. *Id.* § 1843(d). Nautical Look's urine sample tested positive for morphine, a Class I prohibited drug. Plaintiff was Nautical Look's trainer. On those facts alone, under the regulations the Board had a "reasonable expectation" of obtaining a valid "conviction."

Nor does the fact that the Board destroyed Nautical Look's blood samples prove bad faith. Nautical Look's blood samples were not singled out for destruction. The samples were destroyed (a) pursuant to a random practice of destroying one-third of the blood samples at the laboratory, and (b) pursuant to the Board's policy of destroying split samples after 45 days if no request for testing has been made.

In the absence of any evidence of bad faith, such as bias against Plaintiff, or of a harassing motive, no exception to the application of *Younger* abstention is warranted.

### (b) *There are no extraordinary circumstances.*

Plaintiff's claim of "extraordinary circumstances" is rooted only in the claimed constitutional violation. As discussed earlier, the constitutional dimension of the error claimed does not, by itself, constitute an exception to the application of *Younger* abstention. "Extraordinary circumstances" have not been cataloged fully, but Plaintiff's case does not approach the example referred to in *Younger*. *See Aiona v. Judiciary of Haw.*, 17 F.3d 1244, 1248–49 (9th Cir.1994) ("For example, if a statute 'flagrantly and patently' violates 'express constitutional prohibitions in every clause, sentence and paragraph,' then fed-

eral intervention in state court proceedings is appropriate." (quoting *Younger*, 401 U.S. at 53, 91 S.Ct. 746)).

### B. *Attorney fees*

Fees were awarded on the ground that Plaintiff was the "prevailing party." 42 U.S.C. § 1988. For the reasons that we have explained, however, Plaintiff was not entitled to prevail below. Thus, the fee award must be reversed.

REVERSED and REMANDED with instructions to vacate the award of attorney fees to Plaintiff and to dismiss the action.