113 F.3d 1129
 41 Cont.Cas.Fed. (CCH) P 77,112, 97 Cal. Daily
Op. Serv. 3811,
97 Daily Journal D.A.R. 6472
Durmond LOOK; Planned Systems International, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-15678.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1996.
Decided May 21, 1997.
 
 Durmond Look, pro se, Honolulu, Hawaii, for plaintiffs-appellants.
 Thomas A. Helper, Assistant United States Attorney, Honolulu, Hawaii, for defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii, Alan C. Kay, Chief District Judge, Presiding. D.C. No. CV-93-00445-ACK.
 Before: WALLACE, SCHROEDER, and ALARCON, Circuit Judges.OPINION
 WALLACE, Circuit Judge.
 
 
 1
 Plaintiffs Durmond Look and Planned Systems International (Look) appeal from the district court's summary judgment in favor of the United States in this action challenging the United States Army's (Army) decision to award a computer service contract to Datalect Computer Services (Datalect). The district court held that Look lacked standing because he did not have a substantial chance of receiving the award. The district court had jurisdiction under 28 U.S.C. § 1346(b). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. Although the district court also based its summary judgment in favor of the United States on several alternative grounds, we affirm on the ground that Look does not have standing to maintain this action.
 
 
 2
 * Look was an unsuccessful bidder for a computer servicing contract awarded in Europe by the Contracting Command of the United States Army, Europe. Some of the computers covered by the contract were in locations requiring a secret Facilities Clearance Level (FCL). The solicitation issued by the Army on July 23, 1992, stated that the contract would go to the lowest technically acceptable bidder. It also included Department of Defense Form 254, which sets forth the security requirements for the contract. That form specified that the work required a FCL.
 
 
 3
 In a series of letters beginning on August 27, 1992, Look inquired whether foreign-controlled companies would be permitted to bid. The Army responded that foreign-controlled companies were eligible to bid as long as they subcontracted the work requiring a FCL to a United States company with the appropriate security clearance. Final offers on the solicitation were due on January 25, 1993. On February 5, 1993, Blocks A and B of the contract were awarded to Datalect, a British firm. Datalect's bid stated that it would subcontract the work requiring a FCL to an appropriate American firm.
 
 
 4
 Look was the fourth lowest bidder on Block A, with two American firms submitting lower bids. On Block B, Look was the fifth lowest bidder, behind three American firms.
 
 II
 
 5
 We review the district court's summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Summary judgment is appropriate when there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Id.
 
 
 6
 "Standing involves both constitutional requirements and prudential limitations." United States v. Mindel, 80 F.3d 394, 396 (9th Cir.1996). "In both dimensions it is founded in concern about the proper--and properly limited--role of the courts in a democratic society." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The "irreducible constitutional minimum of standing" is an actual or imminent invasion of a concrete and legally-protected interest which is fairly traceable to the conduct complained of and likely to be redressed by a favorable decision on the merits. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 2135-37, 119 L.Ed.2d 351 (1992); Western Radio Services v. Espy, 79 F.3d 896, 902 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996). In addition, in cases challenging agency action under section 702 of the Administrative Procedures Act, 5 U.S.C. § 702, the plaintiff must also show that his "complaint fall[s] within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982).
 
 
 7
 Disappointed bidder actions like this one present difficult standing problems, because often the plaintiff would not have received the contract award even if the alleged legal error had not occurred. According to the solicitation, the Army would award the contract to the lowest technically acceptable bid. Two American firms submitted lower bids than Look on Block A of the contract, and three American firms submitted lower bids on Block B. Look concedes that he had no substantial chance of receiving an award even if the Army had excluded foreign firms from bidding. That concession creates a substantial constitutional question as to whether Look has suffered an injury either fairly traceable to the Army's conduct or likely redressable by a favorable decision on the merits. It also suggests that Look's suit may not fall within the "zone of interests" protected by federal defense procurement statutes.
 
 
 8
 Our circuit has not yet considered this problem. We have held several times that "[i]t is well settled that a 'disappointed bidder' has standing to challenge a federal agency's illegal award of a contract." Big Country Foods v. Board of Education, 952 F.2d 1173, 1176 (9th Cir.1992); see also Armstrong & Armstrong v. United States, 514 F.2d 402, 403 (9th Cir.1975). Those cases relied upon the District of Columbia Circuit's Scanwell Laboratories v. Shaffer, 424 F.2d 859, 861-73 (D.C.Cir.1970) (Scanwell ). In both Big Country Foods and Armstrong, however, it was clear that the party challenging the award was next in line to receive it. The D.C. Circuit has also clarified Scanwell, and now denies standing in cases like this one unless the plaintiff had a "substantial chance" of receiving an award. See, e.g., Energy Transportation Group v. Maritime Administration, 956 F.2d 1206, 1211 (D.C.Cir.1992) (Energy Transportation ). Under the circumstances, the expansive language in Big Country Foods and Armstrong does not control the result in this case.
 
 
 9
 Although at times unclear, the D.C. Circuit has held that a disappointed bidder like Look lacks standing under Article III of the Constitution unless he was within the "zone of active consideration" for the contract award. See Energy Transportation, 956 F.2d at 1211; see also National Maritime Union v. Commander, Military Sealift Command, 824 F.2d 1228, 1237 n. 12 (D.C.Cir.1987) (National Maritime ); CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1574 (Fed.Cir.1983) (CACI ). This test requires a disappointed bidder to "demonstrate only that if its bid had been fairly and honestly considered, 'there was a substantial chance that [it] would receive an award.' " Energy Transportation, 956 F.2d at 1211, quoting CACI, 719 F.2d at 1574. The D.C. Circuit's rationale was that "[t]here could be no real injury--certainly no injury 'fairly traceable' to the allegedly illegal act--unless the plaintiff would have had some chance of prevailing in a bidding free of the alleged illegalities." Id.
 
 
 10
 There are cases, not from our circuit, which imply that all bidders may also have an independent legally cognizable interest in a fair procurement process. In CACI, the Federal Circuit wrote that
 
 
 11
 [t]he flaw in the government's [causation-based] argument here is that it misconceives the nature of the injury that unsuccessful bidders seek to rectify in bid protest suits.... The injury CACI here asserts is that the government's breach of its implied contract to deal fairly with all bidders denied CACI the opportunity to have its bid considered solely on the merits.
 
 
 12
 CACI, 719 F.2d at 1575; see also National Maritime, 824 F.2d at 1237-38; Scanwell, 424 F.2d at 864. The question arises, therefore, whether the federal procurement regulations confer a legal right to a fair process? We have said that "[t]he actual or threatened injury required by Article III may exist solely by virtue of a statute that creates legal rights, the invasion of which creates standing." Duffy v. Riveland, 98 F.3d 447, 453 (9th Cir.1996), quoting Greater Los Angeles Council on Deafness v. Baldrige, 827 F.2d 1353, 1358 (9th Cir.1987). But we have also properly explained that Congress must intend to create a procedural right, the invasion of which is sufficient to satisfy the constitutional requirement of injury in fact. Fernandez v. Brock, 840 F.2d 622, 629-30 (9th Cir.1988).
 
 
 13
 We agree with the D.C. Circuit that, notwithstanding the language in National Maritime and Scanwell, the federal procurement regulations do not create such a broad procedural right for all disappointed bidders.
 
 
 14
 While we have characterized the disappointed bidder's injury as being to its "right to a legally valid procurement process," that characterization does not relieve the plaintiff of the need to show a causal link between its loss and the agency's illegal conduct. There could be no real injury--certainly no injury "fairly traceable" to the allegedly illegal act--unless the plaintiff would have had some chance of prevailing in a bidding free of the alleged illegalities. One way in which we have screened out plaintiffs who lacked that prospect has been to require that a plaintiff has been " 'within the zone of active consideration' for the bid's award." ... "[O]therwise nuisance suits could handicap the procurement system," and the courts would be filled with cases not justiciable under Article III.
 
 
 15
 Energy Transportation, 956 F.2d at 1211 (citations omitted). To establish standing to challenge a federal contract award, a disappointed bidder must "demonstrate that if its bid had been fairly and honestly considered, 'there was a substantial chance that [it] would receive an award.' " Id. Because Look concedes that he had no substantial chance of receiving the award, he lacks standing to maintain this action under Article III.
 
 
 16
 The prudential standing doctrine presupposes that the plaintiff already has Article III standing--the constitutional minimal requirement to sue. If Article III standing exists, the plaintiff may go forward unless he lacks prudential standing. In this case, we need not address the prudential standing question because Look did not establish Article III standing.
 
 III
 
 17
 In addition to his claim as a disappointed bidder, Look asserts standing on an unconventional ground. As the performing incumbent on the contract, the Army might have retained Look for a brief contract extension if the Army had set aside the original award and ordered a resolicitation. Look argues that the loss of that extension was a legal injury both fairly traceable to the Army's conduct and redressable by a favorable decision on the merits.
 
 
 18
 Although creative, Look's argument misconceives the nature of the standing requirement. The alleged legal error in this case is the Army's decision to permit foreign companies to bid. The injury that Look claims does not appear to be "fairly traceable" to that error. If the Army had never accepted bids from foreign companies, Look would have had no chance for a contract extension. The injury may be "fairly traceable" to the Army's refusal to reopen bidding, but not to the claimed solicitation defect itself. In addition, Look is no longer the performing incumbent on the contract and there is no guarantee that the Army would retain him for an extension if we now set the award aside.
 
 
 19
 AFFIRMED.