256 F.3d 879 (9th Cir. 2001)
 TABLE BLUFF RESERVATION (WIYOT TRIBE);THE APACHE TRIBE OF OKLAHOMA;THE COMANCHE TRIBE; THE DELAWARE TRIBE OF WESTERN OHIO;THE EIGHT NORTHERN INDIAN PUEBLOS COUNCIL OF NEW MEXICO; THE INDEPENDENT HOPI VILLAGE OF SHUNGOPAVI; THE KIOWA TRIBE OF OKLAHOMA; THE LA JOLLA TRIBE; PONCA TRIBE; THE CONFEDERATED TRIBES OF COLVILLE CONSISTING OF THE CHELAN TRIBE, THE ENTIATS TRIBE, THE LAKES TRIBE, THE METHOW TRIBE, THE MOSES-COLUMBIA TRIBE,THE NESPELEM TRIBE,THE NEZ PERCE TRIBE, THE OKANOGAN TRIBE, THE PALOUSE TRIBE, THE SAN POIL TRIBE,AND THE WENATCHEE TRIBE, PLAINTIFFS-APPELLANTS
v.
PHILIP MORRIS, INC.; R.J. REYNOLDS TOBACCO HOLDINGS, INC.; R.J. REYNOLDS TOBACCO CO.; AMERICAN TOBACCO CO., INC.; BROWN & WILLIAMSON TOBACCO CORP.; B.A.T. INDUSTRIES P.L.C.; LORILLARD TOBACCO CO., INC., DEFENDANTS-APPELLEES
 No. 00-15080
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 14, 2000
July 16, 2001
 
 Joseph E. Russell and William M. Audet, Alexander Hawes & Audet, San Jose, California, for the plaintiffs-appellants.
 John W. Phillips, Heller Ehrman White & McAuliffe, Seattle, Washington, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California Marilyn H. Patel, District Judge, Presiding D.C. No. CV-99-02621-MHP
 Before: Robert Boochever, Diarmuid F. O'Scannlain, and A. Wallace Tashima, Circuit Judges.
 
 BOOCHEVER, Circuit Judge
 
 1
 Table Bluff Reservation (Wiyot Tribe) and nineteen other Indian tribes ("Tribes") sued Philip Morris and other tobacco companies ("Tobacco Companies") after the companies signed a settlement agreement with state and territorial governments, settling claims for, among other things, reimbursement of medical costs incurred in treating smoking-related illnesses. The Tribes contended (among other claims) that the agreement violated their tribal sovereignty, equal protection, and 42 U.S.C. §§ 1981. The district court dismissed the action, holding that the Tribes did not have standing to challenge the agreement. The Tribes appeal. Because the Tribes have not demonstrated the injury in fact required for Article III standing, we affirm the district court's dismissal of the action.
 
 FACTS
 
 2
 On November 23, 1998, Philip Morris, Inc. and six other tobacco manufacturers signed a Master Settlement Agreement ("MSA") with forty-six states, five territories, and the District of Columbia ("Settling States"). The MSA settled the Settling States' lawsuits against the Tobacco Companies over smoking-related health care costs. See Floyd v. Thompson, 227 F.3d 1029, 1032-33 (7th Cir. 2000) (describing the MSA and Wisconsin's action against tobacco companies). In exchange for the Settling States' release of their claims against the Tobacco Companies, the companies agreed to end or curtail some of their activities, such as outdoor advertising and brand name sponsorships. The Tobacco Companies also agreed to fund a program of public education to reduce youth smoking and tobacco-related diseases, and to make payments to the Settling States totaling more than $200 billion. The MSA provided "The Settling States do not purport to waive or release any claims on behalf of Indian Tribes, " and also stated:
 
 
 3
 (ff) Actions Within Geographic Boundaries of Settling States.
 
 
 4
 To the extent that any provision of this Agreement expressly prohibits, restricts, or requires any action to be taken "within" any Settling State or the Settling States, the relevant prohibition, restriction, or requirement applies within the geographic boundaries of the applicable Settling State or Settling States, including, but not limited to, Indian country or Indian trust land within such geographic boundaries. MSA at Section XVIII(ff) ("Section 18(ff)").
 
 
 5
 In June 1999, the Tribes filed a class action complaint in federal district court for the Northern District of California, naming the Tobacco Companies as defendants. None of the named Tribes had sued the Tobacco Companies or attempted to participate in any way in the negotiation of the MSA. The complaint alleged that the MSA violated tribal sovereignty, 42 U.S.C. §§ 1983, equal protection, 42 U.S.C.§§ 1981, the Privileges and Immunities Clause, the Thirteenth Amendment, and 42 U.S.C. §§ 1985(3). The complaint requested declaratory relief, an injunction against the implementation of Section 18(ff), and compensatory and punitive damages in excess of $1 billion.
 
 
 6
 The district court dismissed the complaint for lack of standing, holding that the Tribes failed to present a case or controversy and had not shown injury in fact. The Tribes appeal.
 
 ANALYSIS
 
 7
 Standing is a question of law, which we review de novo. Stewart v. Thorpe Holding Co. Profit Sharing Plan , 207 F.3d 1143, 1148 (9th Cir. 2000), cert. denied, 121 S. Ct. 768 (2001). Like the trial court, we must accept as true all material allegations of the complaint and any other particularized allegations of fact, in affidavits or in amendments to the complaint. Warth v. Seldin, 422 U.S. 490, 501 (1975). "If, after this opportunity [to present facts to support standing], the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed. " Id. at 501-02, 95 S.Ct.2197.
 
 I. Article III standing
 
 8
 "Article III limits the jurisdiction of federal courts to `cases' and `controversies.' Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record. Standing is an essential, core component of the case or controversy requirement." San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996) (quotations and citations omitted). The plaintiff has the burden of establishing standing, and the first element it must show is that it has "suffered an `injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not `conjectural' or `hypothetical.' " Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quotations and citations omitted). The district court concluded that the Tribes failed to show that they have suffered injury in fact.
 
 
 9
 The Tribes argue that they have suffered injury in fact from the MSA in a variety of ways. We address each below.
 
 A. Tribal sovereignty
 
 10
 Indian tribes occupy "a semi-independent position . . . as a separate people," and "the assertion of state regulatory authority over tribal reservations and members . . .. may unlawfully infringe `on the right of reservation Indians to make their own laws and be ruled by them.' " White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 142 (1980) (quoting Williams v. Lee, 358 U.S. 217, 220 (1959)). The Tribes claim they have suffered "injury in fact" to their tribal sovereignty, because the MSA, by regulating outdoor tobacco advertisements within the reservations and trust lands, infringes on the Tribes' right to make their own laws.
 
 
 11
 The MSA provides that the Tobacco Companies must stop advertising outdoors, including on billboards, anywhere within the Settling States, including on Indian lands. If time remains on the lease of billboard space, the Settling State has the option of substituting public service ads intended to discourage youth smoking. The Tobacco Companies will bear the cost of the lease until it expires.
 
 
 12
 The Tribes claim this "regulation of billboard content on a reservation invades both the tribe's subject matter and territorial jurisdiction." But the mere existence of the provision ending billboard tobacco ads is not enough. See San Diego County Gun Rights Comm., 98 F.3d at 1126 ("[T]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." (quotations omitted)). The Tribes have the burden to establish that they face a "genuine threat of imminent prosecution" under the MSA on tribal land. Id.; see Rincon Band of Mission Indians v. County of San Diego, 495 F.2d 1, 4-5 (9th Cir. 1974) (Indian tribe alleging threatened enforcement of state gambling restrictions on tribal land must show specific, immediate threat to establish injury in fact;threat of a general nature is not enough without "specificity or immediacy").
 
 
 13
 The Tribes did not allege any actual enforcement or even threatened enforcement of the advertising restrictions by the Settling States or by the Tobacco Companies. The MSA does not provide for enforcement against anyone other than the Tobacco Companies. Nor did the Tribes identify in their complaint or elsewhere any tribal regulation, or any tribal contract, that would be affected by the MSA's restrictions on advertising. Their counsel admitted in court that he knew of no instance in which the Tobacco Companies or the Settling States had notified the Tribes that they intended to change advertisements on billboards owned by the Tribes. The Tribes thus alleged no enforcement, and no threat to enforce, the terms of the MSA regarding outdoor advertisement. Further, the Tribes did not allege the existence of any Tribal contract that would be affected by the MSA. They thus have not set forth an injury in fact.
 
 
 14
 The Tribes also complain that the MSA gives the courts of the Settling States exclusive jurisdiction over disputes regarding compliance with the MSA and gives the state Attorney Generals enforcement powers, thus forcing the Tribes into state court and allowing state law enforcement on tribal lands. While the agreement does give state courts exclusive jurisdiction over disputes between the Settling States and the Tobacco Companies regarding the enforcement of the agreement, we do not think it requires third parties such as the Tribes to adjudicate any dispute in state court. (The Tribes are in federal court right now, and the Tobacco Companies did not and do not insist that the MSA prevents their bringing this action.) Further, there is nothing in the record to establish that the Tribes have ever been haled into state court or that state law enforcement officers have enforced the MSA on tribal lands. Again, the Tribes allege that they are injured by the mere existence of these provisions in the MSA, and that is not sufficient to establish injury in fact for standing purposes.
 
 B. Exclusion from the MSA
 
 15
 The Tribes also assert injury in that they were unlawfully excluded from the negotiations leading up to and the execution of the MSA, as well as from the benefits provided for in the agreement. The Tribes phrase this in their complaint as a claim that the Tobacco Companies violated equal protection: "Implicit in the [MSA] is the exclusion of Native American Tribes from the [MSA] benefits, in whole or in part, because of their Native American heritage." The Tribes also claim that their exclusion from the MSA was in violation of their right to make and enforce contracts under 42 U.S.C. sec. 1981.
 
 
 16
 This bare allegation of exclusion, however, is not enough to allege injury in fact. The Tribes must also allege facts to show that absent the alleged equal protection violation by the Tobacco Companies, they would have been able to join in the MSA and share in its benefits. See Warth v. Seldin, 422 U.S. at 505-06 (to survive a motion to dismiss for lack of standing, petitioners alleging unconstitutionally restrictive zoning which purposefully excludes low-income persons from buying homes must allege facts showing that absent the zoning by defendants, they would have been able to buy homes in the area). The Tribes would have to allege facts establishing that they were similarly situated to the Settling States. In this case, the Tribes could do so by alleging that, like the Settling States, they had made claims against the Tobacco Companies for health care costs which had been rejected, and that their exclusion from the MSA injured their future ability to get reimbursement for health care costs or other relief from the Tobacco Companies.
 
 
 17
 The Tribes nowhere allege that any of the named plaintiff tribes had any cases pending against the Tobacco Companies. The complaint states only that "Defendants did not enter into settlement agreements with any Native American Tribes, including tribes with pending litigation." But the Tribes cannot establish injury in fact by alleging that unnamed members of the class were injured.
 
 
 18
 Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless these petitioners can thus demonstrate the requisite case or controversy between themselves personally and respondents, none may seek relief on behalf of himself or any other member of the class.
 
 
 19
 Id. at 502, 95 S.Ct.2197 (emphasis added and quotations omitted); see Hodgers-Durgin v. De la Vina, 199 F.3d 1037, 1044-45 (9th Cir. 1999) (named plaintiffs representing a class must allege and show personal injury to themselves, not injury to other, unidentified class members). Even construing the complaint as alleging that unnamed members of the class had sued the Tobacco Companies and thus were injured by their exclusion from the MSA, the Tribes have not shown injury in fact, because they must allege injury to a named plaintiff. Further, the MSA itself provides that the Tribes' future ability to bring suit against the Tobacco Companies will not be impaired by the agreement ("The Settling States do not purport to waive or release any claims on behalf of Indian Tribes."). Other plaintiffs have sued the companies without being barred by the MSA. See, e.g., Floyd, 227 F.3d at 1036 (MSA "did not purport to extinguish the claims of individual persons who were not part of the settlement process"); United States v. Philip Morris, Inc., 116 F. Supp. 2d 131, 149 (D.D.C. 2000) (MSA does not preclude federal government from seeking injunctive relief and disgorgement from tobacco companies).
 
 
 20
 We conclude that the Tribes did not show injury in fact based on their alleged exclusion from negotiation of the MSA.
 
 
 21
 The Tribes also claim they were injured by their exclusion from the benefits of the MSA, presumably the billions of dollars to be disbursed to the Settling States. The complaint states that "there is no provision . . . for providing any benefits, economic or otherwise, to Native American Tribes." Again, because the Tribes do not allege facts showing that they were eligible to be included in the MSA, they have not demonstrated that they were injured because they do not receive payments from the agreement.
 
 
 22
 Further, the Tobacco Companies' payment to each Settling State is based on its entire state population, including Indians. The benefits are not paid directly to the citizens of the state, but it is implicit in the MSA that the state is to use the funds to benefit all its citizens. There is no section in the MSA excluding Indian citizens from the benefits received by the Settling State, and the Tribes have failed to allege facts supporting a finding of such exclusion.
 
 
 23
 The Tribes have failed to show injury in fact by reason of their failure to receive payments under the MSA.
 
 C. Price increases
 
 24
 The Tribes also allege that increases in cigarette prices following the execution of the MSA injure the Tribes and tribal members, because individual Indian smokers must pay the higher prices without a corresponding financial compensation (in the form of payments under the MSA) to the Tribes. The Tribes claim that this violates due process. They claim parens patriae standing to protect their smoking members.
 
 
 25
 "Parens patriae" standing allows a sovereign to bring suit on behalf of its citizens when the sovereign "allege[s] injury to a sufficiently substantial segment of its population," "articulate[s] an interest apart from the interests of particular private parties," and "express[es] a quasi-sovereign interest." Alfred L. Snapp & Son v. Puerto Rico, 458 U.S. 592, 607 (1982); see Connecticut v. Physicians Health Serv., 103 F. Supp. 2d 495, 504-08 (D. Conn. 2000) (full discussion of the doctrine). But before proving that they could satisfy these requirements, the Tribes still must allege injury in fact to the citizens they purport to represent as parens patriae. The injury they assert here is that members of the Tribes who smoke (the "substantial segment of [the Tribes'] population") have to pay higher prices for cigarettes.
 
 
 26
 In Hise v. Philip Morris Inc., 46 F. Supp. 2d 1201 (N.D. Okla. 1999), aff'd, 208 F.3d 226 (10th Cir.), cert. denied, 121 S.Ct. 384 (2000), a plaintiff class of tobacco consumers challenged the MSA on a variety of grounds, including a claim that "defendants' action in raising prices of tobacco products amounts to a deprivation of plaintiffs' property interest without due process of law, in violation of plaintiffs' constitutional rights." Hise, 46 F. Supp. 2d at 1209. In the same manner that the plaintiff Tribes in this case argue on behalf of their smoking members, the Hise plaintiffs argued that their due process rights were violated "because the`damages' paid to States by Defendants under the [MSA] are being assessed against Plaintiffs [through the price increases ] without Plaintiffs being made parties to the actions previously filed in the separate States." Id. The Hise court characterized this allegation as "frivolous," because "plaintiffs clearly have no recognized property interest in paying a certain sum to a retailer to purchase a tobacco product." Id. Price increases are a common business practice to pass on higher costs, and
 
 
 27
 If plaintiffs were to succeed here, then every time a manufacturer is held liable, or agrees to settle a dispute, and thereafter increases the price of its product in order to cover the damages it is required to pay, all consumers of its product could bring an action alleging a due process violation. The absurdity of such a result is plain.
 
 
 28
 Id. at 1209-10.
 
 
 29
 Standing was not in issue in Hise (the court granted summary judgment for the defendants). We agree with the court's reasoning, however, that no constitutional injury occurs when a manufacturer passes on higher costs in the form of price increases. See Forces Action Project LLC v. California, 2000 WL 20977 at *3 (N.D. Cal. Jan. 5, 2000) (price increases after execution of MSA are not sufficient to allege injury in fact for due process claim of plaintiffs, smokers' rights groups and individual smokers). The Tribes' complaint that their members must pay increased tobacco prices does not allege an injury in fact to the Tribes' due process rights.
 
 II. Prudential standing
 
 30
 The Tribes also claim to have satisfied the prudential standing rule, which requires that the claims made of alleged injury fall within the zone of interest for which protection is sought, that the plaintiffs assert their own legal rights, and that the claims are not abstract or generalized questions of wide public significance. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc. , 454 U.S. 464, 474-75 (1982). Because the Tribes have not established that they have Article III standing, however, we do not address this issue.
 
 
 31
 The prudential standing doctrine presupposes that the plaintiff already has Article III standing--the constitutional minimal requirement to sue. If Article III standing exists, the plaintiff may go forward unless he lacks prudential standing. In this case, we need not address the prudential standing issue because [the plaintiff] did not establish Article III standing.
 
 
 32
 Look v. United States, 113 F.3d 1129, 1132 (9th Cir. 1997).
 
 CONCLUSION
 
 33
 The Tribes have not alleged injury in fact sufficient for Article III standing. We affirm the district court's dismissal.