Delores D. DIXON, Plaintiff–Appellant,

v.

WALLOWA COUNTY, a Body Politic & Corporate of the State of Oregon; Ron Jett, Wallowa County Sheriff; Richard Stein, Wallowa County Undersheriff; Matt Marmor, Wallowa County Sheriff's Deputy; Roger Jensen; Norma Jean McNall, Defendants–Appellees.

Delores D. Dixon, Plaintiff–Appellee,

v.

Wallowa County, a Body Politic & Corporate of the State of Oregon; Ron Jett, Wallowa County Sheriff; Richard Stein, Wallowa County Undersheriff, Defendants–Appellants,

and

Matt Marmor, Wallowa County Sheriff's Deputy; Roger Jensen; Norma Jean McNall, Defendants.

Nos. 01–35709, 01–35710.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 2003.

Filed July 21, 2003.

**1016**

Michael B. Mendelson, Portland, OR, for the plaintiff-appellant/cross-appellee.

Bruce L. Mowery, Salem, OR, for the defendants-appellees/cross-appellants.

Before WALLACE, TROTT, and TASHIMA, Circuit Judges.

Opinion by Judge WALLACE; Concurrence by Judge TASHIMA.

## OPINION

WALLACE, Senior Circuit Judge.

Dixon appeals from Fourth Amendment and Due Process summary judgments and a judgment after jury trial in her 42 U.S.C. · § 1983 claims against Wallowa County (County) and certain county officers. The two individual defendants cross-appeal, asserting errors in three summary judgment rulings. The district court had jurisdiction under 28 U.S.C. § § 1331 and 1343. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291, and we affirm.

### I.

On June 7, 1998, state police officers arrested Colpitts on charges of rape, sodomy, and sexual abuse, crimes allegedly committed in his Wallowa County home. Pursuant to a warrant, the police searched the house the day of the arrest. Dixon, who was renting a room from Colpitts, was present. She asserts that before leaving, an officer returned control of the premises to her and informed her that the search was complete. Later that evening, Dixon conducted her own search and uncovered a nightgown and some pictures. Believing they might be evidence of the alleged crime, she telephoned County Sheriff Jett, who came to the house and collected the objects.

The next day, Dixon began packing her belongings into a moving truck. McNall, the daughter of Colpitts's ex-wife, saw this and called County Undersheriff Stein out of concern that some of her mother's belongings were being taken. At District Attorney Ousley's office, Undersheriff Stein, District Attorney Ousley, and Sheriff Jett discussed the situation and the possibility of seizing the premises as a scene of Colpitts's crime. Sheriff Jett recalled that several loaded weapons were

found at the residence during the previous search, and the three discussed the possibility that the search overlooked evidence of the alleged crime. After the meeting, Undersheriff Stein went to the Colpitts residence and declared the premises to be a crime scene. Undersheriff Stein collected the house keys, and a few days later, he returned the keys to McNall.

The district court entered summary judgment in favor of the County, holding that Dixon failed to demonstrate an actionable county policy. The case against the individual defendants proceeded to trial solely on the issue of qualified immunity, and the jury found against Dixon.

In this appeal, Dixon argues that (1) the district court erred in failing to grant her summary judgment on the issue of qualified immunity on her Fourth Amendment claim, (2) the district court erred in failing to grant Undersheriff Stein summary judgment on the issue of qualified immunity on Dixon's due process claim, (3) the district court erred in denying her motions for judgment as a matter of law and abused its discretion in denying her motion for a new trial, (4) the district court erred in its instruction to the jury on exigent circumstances, (5) the district court erred in granting the County summary judgment on her Fourth Amendment claim, (6) the district court erred in granting the County summary judgment on her due process claim, and (7) the district court abused its discretion in refusing to amend the judgment for the County. Finally, the individual defendants argue on cross-appeal that the district court erred in denying them summary judgment. We address each argument in turn.

## II.

■ Dixon argues that the district court erred in denying her summary judgment on the issue of qualified immunity on her Fourth Amendment claim against the officers in their individual capacities. We refuse to review the district court's denial of summary judgment after there has been an adverse jury verdict. *De Saracho v. Custom Food Mach., Inc.,* 206 F.3d 874, 877–78 (9th Cir.2000); *Price v. Kramer,* 200 F.3d 1237, 1243 (9th Cir.2000).

## III.

■ For reasons unknown, Dixon argues that the district court erred in denying Undersheriff Stein summary judgment as to qualified immunity on the due process claim. Dixon lacks standing to make this argument since she was not injured by the district court's ruling.

## IV.

Dixon argues that the district court erred in denying her motion for judgment as a matter of law against the individual defendants on her Fourth Amendment claim. We review de novo. *Janes v. Wal–Mart Stores, Inc.,* 279 F.3d 883, 886(9th Cir.2002).

Three months after the jury verdict, the Supreme Court issued *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), which adopted the following qualified immunity inquiry: first, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If so, "the next, sequential step is to ask whether the right was clearly established." *Id.* Dixon would not be entitled to judgment if, under the first *Saucier* inquiry, the officers' conduct did not violate her constitutional right to be free from unreasonable searches and seizures.

■ The district court decided whether the constitutional right was "clearly established" without first determining whether

there was a constitutional violation. Because *Saucier* was decided after the district court's ruling, the district court was unaware of the order the Supreme Court desired to have the issues of the case decided. Nonetheless, we do not remand for the district court to consider whether there was a constitutional violation for qualified immunity purposes. Instead, we take that question ourselves. We may affirm the district court on any ground supported by the record. *Papa v. United States,* 281 F.3d 1004, 1009 (9th Cir.2002). This same situation was presented in *Resnick v. Adams,* 317 F.3d 1056 (9th Cir. 2003), where we decided the constitutional issue without remanding for the district court to consider the alleged constitutional violation with the attendant briefing and argument of the parties. Although we do not hold that this is the only method of solving the problem of pre-*Saucier* determinations, it does fit in the case before us.

 Securing the Colpitts residence as a crime scene is a seizure subject to Fourth Amendment protection. *United States v. Alaimalo,* 313 F.3d 1188, 1192 n. 1 (9th Cir.2002). Police may secure a home, even without a warrant, if exigent circumstances exist such that "a reasonable person would believe that entry ... was necessary to prevent the destruction of relevant evidence, or some other consequence improperly frustrating legitimate law enforcement efforts." *Id.* at 1192, quoting *Bailey v. Newland,* 263 F.3d 1022, 1033(9th Cir.2001).

 Because Dixon was removing property from the residence, it was reasonable for the officers to believe that entry was necessary to prevent evidence from being lost or destroyed. But for the seizure, Dixon would have successfully removed property from the residence. The officers also had probable cause to enter the home because, under the totality of circum-

stances, there was a "fair probability" that they would find evidence of a crime. *United States v. Alaimalo,* 313 F.3d 1188, 1193 (9th Cir.2002) (concluding that there was probable cause to believe evidence was inside a house, holding that "[p]robable cause requires only a fair probability or substantial chance of criminal activity ... there was a fair probability that the drug package was inside his house ...."); *United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991) ("Probable cause exists when, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (internal quotation marks omitted); *see also Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ("That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means a fair probability that contraband or evidence of a crime will be found.") (internal quotation marks omitted). As Dixon's own personal search of her home indicated, the officers overlooked some potential evidence of the alleged crime. They also failed to find everything listed on the search warrant. Therefore, we conclude that, taking the facts in a light most favorable to Dixon, there was no Fourth Amendment violation.

Because there was no Fourth Amendment violation, the officers were entitled to judgment. Thus, the district court properly denied her motion. For the same reason, the district court did not err in denying her renewed motion for judgment as a matter of law and her motion for a new trial on her Fourth Amendment claim.

 Dixon also argues that the district court erred in denying her motion for judgment as a matter of law, her renewed motion for judgment as a matter of law, and her motion for a new trial on her due

process claim against the individual defendants. We cannot rule on her motion for judgment as a matter of law on the due process claim because she never made the motion to the district court. She did, however, make a "renewed" motion for judgment as a matter of law. A renewed motion for judgment as a matter of law may be made only if there was a prior motion for judgment as a matter of law. FED R. CIV. P. 50(b). Because there was no prior motion on her due process claim, the district court properly denied her "renewed" motion for judgment as a matter of law.

As to her motion for a new trial on her due process claim, we review the district court's denial for an abuse of discretion. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002).

■ Dixon does not argue that the district court applied the incorrect standard, but instead argues that the verdict was against the clear weight of the evidence. In assessing this argument, we may reverse the district court's denial of a new trial only if "the record contains no evidence in support of the verdict." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1189–90(9th Cir.2002).

■ Under *Saucier's* qualified immunity inquiry, the second question requires the court to ask whether a reasonable officer could have believed that his conduct was lawful. 533 U.S. at 202, 121 S.Ct. 2151. The jury heard evidence that the officers relied on District Attorney Ousley's advice. Though not conclusive, reliance on an attorney's advice is some evidence of good faith. *Stevens v. Rose*, 298 F.3d 880, 884 (9th Cir.2002). In *Johnston v. Koppes*, 850 F.2d 594, 596 (9th Cir.1988), we listed four questions relevant in determining whether an officer's reliance on advice of counsel was reasonable: (1) whether the attorney was independent,

(2) whether the advice addressed the constitutionality of the proposed action, (3) whether the attorney had all the relevant facts, and (4) whether the advice was sought before or after the officer's action. Though Dixon raises doubts as to whether the District Attorney addressed the constitutionality of their action and whether the District Attorney had all the relevant facts, there was at least some evidence that the officers relied on his independent advice before acting, and there is thus at least some evidence that a reasonable officer could have believed his conduct was lawful. The district court did not abuse its discretion in denying Dixon's motion for a new trial.

## V.

■ The district court instructed the jury that to be entitled to qualified immunity on Dixon's Fourth Amendment claim, the officers must establish

> (1) that they held a reasonable belief that the search warrant was still valid on June 8, 1998, and there were exigent circumstances giving rise to a concern that additional evidence might still remain in the house and was likely to disappear or be destroyed before police could search the house again; or

> (2) that Undersheriff Stein and Sheriff Jett reasonably relied on the advice of District Attorney Ousley as grounds for seizing the house ...

Dixon argues that the officers must have a particularized suspicion that specific items of additional evidence remained in the house. We need not decide whether the jury instructions were erroneous because, even were we to assume the error Dixon asserts, any error would be more probably than not harmless. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir.2001) (holding that an error in jury instructions

does not require reversal if "the error is more probably than not harmless."), *cert. denied* 535 U.S. 1018, 122 S.Ct. 1609, 152 L.Ed.2d 623 (2002). Because the jury specifically found that the officers reasonably relied on the District Attorney's advice, and this was an independent and adequate ground for finding the officers enjoyed qualified immunity, any error regarding the instructions on the officers' suspicion of remaining evidence was harmless.

### VI.

 Sheriff Jett cross-appeals the district court's denial of his motion for summary judgment, arguing the district court erred in concluding that he participated in a constitutional violation by his decision to seize the residence. Sheriff Jett lacks standing to make this cross-appeal, since he was not aggrieved in the district court.[1] "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Though there is an exception if the adverse ruling could serve as the basis for collateral estoppel in subsequent litigation,

*Ruvalcaba v. City of Los Angeles,* 167 F.3d 514, 520 (9th Cir.1999), this exception does not save Sheriff Jett's cross-appeal because the issue of his participation in the constitutional violation has no issue preclusive effect. Issue preclusion does not apply to an issue that is not appealable. RESTATEMENT (SECOND) OF JUDGMENTS § 28(1) (1982); *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.,* 257 F.3d 1071, 1076 (9th Cir.2001) (stating that this "argument from collateral estoppel consequences has elements of circularity. As collateral estoppel does not apply to an unappealable determination, simply holding a ruling unappealable eliminates any prospect of preclusion.") (internal quotation marks and citation omitted). Or, to put it another way, the district court's determination that Sheriff Jett participated in the constitutional violation was immaterial to the final judgment. *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.,* 307 F.3d 944, 947 n. 1 (9th Cir. 2002); *United States v. Good Samaritan Church,* 29 F.3d 487, 488(9th Cir.1994).

The individual defendants cross-appeal from the district court's denial of their motion for summary judgment as to their

---

**1.** The concurrence suggests we should apply the same analysis here as we did in Part II. There, Dixon challenged the denial of *her* summary judgment motion. We did not reach this argument because the jury found in favor of the officers. *De Saracho,* 206 F.3d at 877–78; *Price,* 200 F.3d at 1243. She had constitutional standing to make this argument, but prudence dictated we not address it.

We conclude that a different analysis is necessary in Part VI because of the officers' lack of constitutional standing. While we recognize that we are to avoid needlessly reaching constitutional issues, the Supreme Court consistently instructs us not to assume jurisdiction to dispose of the case on easier grounds. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (rejecting the practice of assuming jur-

isdiction to decide the merits). Our refusal to examine a denial of summary judgment after trial is a matter of prudence. *See Price,* 200 F.3d at 1243–44 ("we see no reason to deviate" from the rule of refraining to review such summary judgment denials). We should address defects to constitutional jurisdiction before addressing prudential doctrines. *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.,* 256 F.3d 879, 886 (9th Cir.2001) (observing the court is to address Article III standing before prudential standing); *Look v. United States,* 113 F.3d 1129, 1132 (9th Cir. 1997) (same); *Conte Bros. Auto. v. Quaker State–Slick 50, Inc.,* 165 F.3d 221, 225 (3d Cir.1998) (citing *Steel Co.* for the proposition that a "question of Article III standing is [a] threshold issue that should be addressed before issues of prudential and statutory standing").

qualified immunity on Dixon's Fourth Amendment claim, · arguing that the law was not clearly established. Undersheriff Stein also cross-appeals from the district court's denial of his motion for summary judgment as to his qualified immunity on the procedural due process claim, arguing that due process does not require individualized notice and an opportunity to be heard. The individual defendants lack standing to raise these claims.

Arguably, by having to stand trial, they were aggrieved in the district court because they were deprived of qualified immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.") (emphasis omitted). This is their only arguable injury from the district court's rulings. But we need not decide whether it is sufficient for standing because the individual defendants fail to show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., (TOC) Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

■ The damage of having to appear for trial is done, and it cannot be undone. Because their motion for summary judgment on qualified immunity turns on an issue of law, the officers could have taken an interlocutory appeal of the district court's denial of their summary judgment motion. *See Mitchell*, 472 U.S. at 526–27, 105 S.Ct. 2806. Interlocutory appeal is permitted in this situation because "the district court's decision is effectively unreviewable on appeal from a final judgment." *Id.* Even if we held that the district court erred in requiring them to stand trial, we could not relieve the individual defendants of their injuries, since the trial already occurred. "Relief that does not remedy the injury suffered cannot bootstrap a [party] into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### VII.

■ The district court granted the County summary judgment on Dixon's Fourth Amendment claim, holding that Dixon failed to demonstrate an actionable municipal policy regarding the designation of the Colpitts residence as a crime scene. We need not review the validity of the district court's absence of policy determination because, as we held, the officers did not violate Dixon's Fourth Amendment rights when they seized the residence. This holding precludes section 1983 municipal liability regardless of whether there was a County policy. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir.2002); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir.1996). On that basis, the district court did not err in entering summary judgment in favor of the County on Dixon's Fourth Amendment claim.

### VIII.

The district court also granted summary judgment to the County on Dixon's procedural due process claim, holding that Dixon failed to demonstrate a county policy regarding Stein's release of the house keys to McNall under the District Attorney's orders. We review de novo, *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir.2001). There is no evidence in the summary judgment record that this decision was made by an official policymaker.

Indeed, Dixon conceded as much to the district court.

■ Dixon cites the trial record to argue that the County's policy was to defer to the District Attorney's decision regarding the release of keys. Dixon also argues that the defendants made a judicial admission in their appellate briefs that the District Attorney, not the Undersheriff, had the authority to release property.

In reviewing a summary judgment, "we are limited to the . . . evidence available to the court at the time the motion was made." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1121 (9th Cir.1994). On the summary judgment record, as opposed to the trial record, Dixon failed to show that the District Attorney was a county policymaker regarding the release of the keys. Thus, the district court properly entered summary judgment in favor of the County on Dixon's procedural due process claim.

### IX.

■ After the court granted the County summary judgment, Dixon proceeded to trial against the officers in their individual capacities on the issue of qualified immunity. The County did not appear at trial. After trial, Dixon moved under Rule 59(e) to alter or amend the summary judgment in favor of the County on her due process claim, arguing that the trial evidence proved that the decision to release the keys was made by the district attorney. We review a district court's decision on a Rule 59(e) motion to amend a judgment for abuse of discretion. *Far Out Prods.*, 247 F.3d at 992.

■ Rule 59(e) amendments are appropriate if the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). Dixon invokes the first possibility: evidence was discovered at trial that demonstrates that the County had an actionable policy. To justify an amendment, Dixon must also show that the evidence was discovered after the judgment, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different. *Far Out*, 247 F.3d at 992–93. Dixon fails to demonstrate that this "newly discovered evidence" could not have been discovered earlier through due diligence. The district court did not abuse its discretion in its denial of Dixon's Rule 59(e) motion.

AFFIRMED.

TASHIMA, Circuit Judge, concurring.

I concur in all of Judge Wallace's opinion, except for the basis on which it affirms the cross-appeal of the individual defendants in Part VI. The opinion holds that "[t]he individual defendants lack standing to raise these claims," as a matter of constitutional Article III standing. Maj. op. at 1021. I, too, would dismiss this appeal, but would not reach the constitutional issue.

The Supreme Court has admonished innumerable times that we should "avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. N.W. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) (stating the same as "[a] fundamental and longstanding principle of judicial restraint"). Like Dixon's appeal discussed in Part II of the majority

opinion, the cross-appeal is from the district court's denial of summary judgment on the issue of qualified immunity. Thus, it ought to be disposed of on the same, non-constitutional basis. As the majority opinion holds: "We refuse to review the district court's denial of summary judgment after there has been an adverse jury verdict. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 877–78(9th Cir. 2000); *Price v. Kramer*, 200 F.3d 1237, 1243 (9th Cir.2000)." Maj. op. at 1017. *Price* involved application of the rule to a pre-trial qualified immunity ruling, and we there held that "the denial of a motion for summary judgment is not reviewable on appeal from a final judgment entered after a full trial on the merits." *Id.; see also Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir.2002) (declining to review the denial of summary judgment "after the jury has decided the case"), *cert. denied*, —— U.S. ——, 123 S.Ct. 1583, 155 L.Ed.2d 314 (2003); *cf. Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 2003 WL 21297176, at *1 & n. 2 (9th Cir. Jun.6, 2003) (holding that the district court lacked jurisdiction under the prudential abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and declining to reach the constitutional Eleventh Amendment immunity claim). Given this solid, non-constitutional basis for resolving the cross-appeal, I see no need to reach the constitutional standing issue.

With this qualification, I concur in the majority opinion and in the judgment.